Thank you, Your Honor. May it please the Court, Mr. Ramirez. Good morning. I'm Michael Brewer, here representing Bentley Motors, Inc. The Court may recall from its review of the briefs, this is a Lemon Law case. The successful cause of action from which we appeal, that is successful plaintiff's cause of action from which we appeal, is a state law case challenging Arizona's Lemon Law. It really involves the interplay of the statutory requirements to succeed in a cause of action versus a legal presumption, an evidentiary presumption, in a companion statute. The definition of the statute says that if the manufacturer or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting a substantial defect, we did that. We did that as of September of 2006, which was just less than two years into the warranty, four months prior to the expiration of the two-year period addressed by the Lemon Law. The case is really about four days. The service manager, the warranty administrator I mean, we have alternative understandings of the statute, and the question is, the position you're taking, as I understand it, is that if it's completely fixed within the time period, that's enough, the manufacturer has no other responsibility. And the alternative interpretation is that, look, if it's out of service over a certain period of time, if it's, and I'll take the extreme of the case now, it breaks down every month, and finally, on the 700th day, you get the thing that's out of service within a certain period of time. And if that's not the case, then you can't do anything about it. And if you can't get anything working, Lemon Law has already been triggered. Why is it we should adopt your interpretation of the statute or conclude that Arizona would adopt that interpretation of the statute? Well, in the general sense, I would say that's because the statute requires that we conform the car to the warranty. In other words, why do you say that? Because there is language that's been interpreted in a couple different ways. Well, the statute incorporates, again, the failure. It's really breach of warranty in this particular case with specific legislation addressing automobiles. But the question is, and the warranty is incorporated in the statute, failure to conform the car to the express warranty. And the warranty's promise is that if it breaks, we will fix it. Now, in the case, the extreme case, and, Your Honor, I would suggest that we could probably find extreme examples that would call any rule of law into question. But in this case, again, confining this case to its facts, it's the question of the conduct of the consumer. This consumer accepted the car in September 2007 or, I'm sorry, September 2006 after the 30 days had been exceeded. He brought the car in for its second annual maintenance in December of 2006, made no complaints regarding condition. He continued to drive the car and keep the car clear through the conclusion of the warranty and beyond. So that's the Bailey case from New York. That's the waiver case where his conduct is inconsistent with wanting a refund. And, in fact, he continued to enjoy and insist upon fulfillment of the warranty for another year and a half following the time which exceeded the 30 days. So what I'm suggesting is, and the Bailey case refers to this as a waiver. I'm not saying that the consumer has to accept the car even if repaired. That's not our theory. Our theory is this consumer did and continued to drive the car and insist on warranty coverage for another year and a half. He didn't come to us prior to or at the immediate conclusion of the two-year limit law period and say I'm dissatisfied with the automobile. Instead, he continued to drive it and he brought it to us and has had us continue to service the vehicle. And so, again, Bailey refers to that as a waiver. I think it might be characterized, equally characterized as an election of remedy. But I suppose an analogy we might compare it to would be the statute of limitations. I believe that this cause of action was ripe on the 31st day. But he didn't pursue his cause of action. He chose to go another path. And it's no different. I mean, we don't go to. But it was a path urged by your client. Your client wasn't volunteering to give another car at that point. No. No, no, no. That's not the time frame, Your Honor. We were first contacted in May of 2007 after the two-year limit law had lapsed. All prior communications and contacts were strictly with the dealership. Now, they've raised this theory. They have the theory that notice by the dealership is notice to us, and so we know. And, again, that indulges the fiction that there's a representative in Crewe, England, where these cars are built and where the warranty paperwork is processed that's monitoring each and every of the thousands and thousands of Bentleys on five continents that are being serviced at authorized dealers. It's no different than if I take my TV, my flat-screen TV that I purchased at Best Buy back three, four, or five times, and they say we can fix it, and I take it home, and it malfunctions again a month or two later. That doesn't mean that Sony knows that I'm dissatisfied with the product. Well, does anybody really communicate with the automobile manufacturer? I mean, I wish I could say I would communicate with Bentley, and fortunately, in my case, it's Ford Motor Company. But when I talk to Ford Motor Company, I don't actually talk to Ford Motor Company. I talk to a dealer in Honolulu. Why isn't that dealer accepted as the agent for, in your case, Bentley? Because of the language of the statute, Your Honor. The statute says that the fulfillment, the servicing of the vehicle, the fulfillment of the warranty can occur at an agent or dealership. But in terms of this legal presumption that the 30 days constitutes a reasonable opportunity to repair, 44-1264 subsection C requires direct written notice to the manufacturer. And I guess the best analogy I can think of is vicarious liability. What this plaintiff would say is, I know that you didn't know about it until the two years was up. I know that you didn't have an opportunity to bring in your technician, your field expert, and say here's what's wrong or here's what the dealership is doing wrong. In other words, our first notice is, according to the plaintiff's theory, it's too late. You lose without a single opportunity to correct our product. And, again, I think the 30 days is not per se a rule. The reason I say that is because, to me, this is nothing more than a derivative of Article II of the UCC sales. Every seller of goods gets a right under Article II to cure the defects in his product. This presumption is only to say, look, the owner does not have to. We will not require the owner to take a repeat repair back a fifth occasion. We will not require a consumer to take a car back for more repairs after the 30 days have passed. He can now bring his cause of action and claim I gave you a chance to fix it and you didn't. Here he gave us a chance to fix it and we did. And so if he had chosen, again, to bring his claim when that 30-day period was up. And I think it's important to understand that it's not the state holding, but at least the description of the statute by the State court of appeal in Hall suggests a different perception or a different understanding of the statute. It does, Your Honor. You're correct. So why aren't we directed to follow what the State court itself says about the statute? Well, first, it didn't relate to the – it didn't relate to the disposition of the case. It wasn't the dispositive issue. And so I would submit that it's dicta similar to the Milosevic case. I can't pronounce that. The Nevada case. The Nevada case, yeah. But anyway, the problem with the logic, if you read that quote, and I encourage you to read the quote directly from the opinion, what it does is it starts out reading the presumption from 441264C, the motor vehicle has been out of service for 30 or more calendar days, and then it jumps directly into the other statute, the liability statute. In other words, it does violence to the language of the Act by combining two different sections which don't say that. The definition of liability in 1263 is failure to conform the vehicle to its express warranty. The presumption is not conclusive of liability the way it's written. But, you know, Your Honor, the inclination may be that we had, I believe we quoted or cited a total of seven State court cases from various jurisdictions, and admittedly the authorities are split on this. I have prepared, if I have time, to go through the cases which were cited by Venezia and distinguish those primarily because there's a perception created in the briefs that there's some consistency as though this is a State-to-State adoption of a model act. It's not that true at all. Some of these cases, in fact, some of the cases cited by the appellee actually require that the manufacturer be in the loop from the very beginning when there's a contention of a nonconforming product. On that score, our Court's case from Nevada, are the statutes significantly different? They are. In fact, I have a couple of notes. First off, I can tell Your Honor that that case, the ruling or the holding in Milosevic cites a Wisconsin case. Wisconsin does not give the manufacturer an opportunity to cure. So Wisconsin is a strict liability State. Over the days, over the number of repeat repairs on the same problem? Let's start with Nevada. Okay. I mean, Nevada is the – we are bound by precedent of our Court. Right. And if we don't like it, is Nevada materially different from Arizona in terms of the statute? Well, you may recall, Your Honor, that one of the problems that we raised in the briefs regarding the Nevada statute, or the Nevada model, rather, was that it's expressly stated in the opinion that the – there was a repeat repair that at the time the lawsuit was brought, there was still a defect that had not been fixed. So the 30 days downtime or the strict liability issue was not at issue in that case because the car had not been fixed. In fact, the lower court in Milosevic's – and I'm citing here from 256 F. Supp. 1177. The lower court – this was started in Federal District Court, as you might recall – states the issue – this is after the address of what the – of the strict liability rule, I would call it – quote, the issue is moot in the case at bar because the court has found that the rear window deformity continues even after four attempts, unquote. So they were commenting on what they self-described moot issue. The other problem, I think, with Milosevic is it's interpreting Nevada law. But in terms of that – That's the question I'm trying to pose. I'm sorry. I understand maybe there's a loophole we could escape through, but is the Nevada law itself materially different from the Arizona statute? It is because the notice to the manufacturer, direct written notice to the manufacturer has to occur as a prerequisite to the lawsuit under Nevada law. If a new motor vehicle does not conform to all of the manufacturer – I'm sorry. I'm quoting here from Nevada Revised Statute 597.610. And that's the very first statute in the Nevada model. What it says is, quote, if a new motor vehicle does not conform to all of the manufacturer's applicable express warranties and the buyer reports the nonconformity in writing to the manufacturer either before the warranty expires or no later than one year after the date the motor vehicle was delivered, then it says the manufacturer or its agency dealers makes the necessary repairs. And so the manufacturer is in the loop at the opportunity to cure, at the beginning. So – and that's got to occur before the warranties expire. And so essentially I think the key difference is under that Nevada model, because of the notice requirement to the manufacturer within the warranty period, he's got a chance to fulfill the warranty by fixing the car. And so, quite frankly, we never had the opportunity. Again, by blurring the lines between a dealer and a manufacturer, because we're dealing with cars, it's people – and Your Honor's right. I know that when people say, what's wrong with your car? Well, I took it to the dealer. They said, I took it to Chevrolet. Or as Your Honor said, I took it to Ford. I contacted Ford. Assuming that common identity. But that's not the case. And if you think in terms of other consumer products, blenders sold at Walmart. Again, TVs, stereos sold at Best Buy or other electronics retailers. You can see the difference that the manufacturer doesn't know what's going on between the consumer and the retailer. And so I've suggested in the briefs that warranty sounds in contract. It doesn't quite sound in contract, because we don't have privity. We don't require privity in the case of warranty. But in a sense, we are in contract, because the question is, did the manufacturer live up to its promise under the warranty to fix the car? Now, you know, we see this hyperbole, I think, in the appellant's brief. You're saying 300, 600, up to 700 days, he's got to keep the car? Not at all. But isn't he acting in a manner inconsistent with exercising his remedy at law if he continues to bring it back? I mean, we don't go to the plaintiff in a negligence case and say, you know, you thought you didn't know you had a problem or you didn't raise your problem within the two-year statute of limitations. But, again, ignorance of law is no excuse. If this man thought your red light is on. Oh, I'm sorry. In any case, I believe because of the differences in the law and because of the fact that Milosevic is addressing Nevada law, not Arizona law, that it is not binding. So I'll reserve what little time I have left. Thanks. We'll hear for counsel for plaintiff. Your Honor, Luis Ramirez on behalf of the appellee, Pascual Venezia. Now, this is a remedial statute. Counsel talked about this being an action that sounds in warranty and warranty law. Lemon laws were specifically created because warranty laws were insufficient and consumers needed more protection. So it's a remedial statute. It cannot be interpreted narrowly in order to put requirements that the legislature didn't set up. Secondly, Milosevic is right on point. The part of the statute that counsel cited was the part of the statute that talks about if the vehicle is not conforming, you give notice to the manufacturer, the manufacturer has to fix it. That's just the repair part of the statute. In fact, the Arizona lemon law contains the same exact part of the statute in ARS 1262. Now, that's just a simple repair. ARS 1263 and the Nevada statute, which is, I believe, 597630, those are the enough is enough portion of the statutes. That's when the lemon law says if you cannot repair this within a reasonable number of attempts, then, meaning the other element, which is that the defect substantially impaired, then you have a lemon. And that's the problem with Bentley's whole argument on appeal, that they omit that language of reasonable number of attempts. Reasonable number of attempts, it's the meat of the statute. It tells you that once you reach that point, once the consumer has taken it to the manufacturer or its agents for a reasonable number of attempts, that's enough is enough. You don't have to continue to go. And they mention waiver and they mention statute of limitations. The lemon law has a statute of limitations. It says you can bring the claim at any point within two years, within six months of the vehicle going over two years or 24,000 miles. So for them to try to create some kind of statute of limitations saying, okay, well, you reached a reasonable number of attempts, now your choice as a consumer is either to go ahead and have a lawsuit, which we're going to fight you for two years, and during those two years you can't take your vehicle in to be fixed. And they talk a lot about waiver and they rely a lot on the Culbertson case from New York, but they don't mention that Culbertson's decision was 13 years ago. So the New York higher court, the New York Court of Appeals in the Spitzer case, which we cited in our supplemental briefs, revisited the issue and said there's no waiver. You cannot expand. By the way, the New York lemon law is exactly the same as the Nevada lemon law, which is exactly the same as the Arizona lemon law, same language. Let me bring to you essentially the same inquiry I brought to appellant's counsel, which is that you look at the statute, there are alternative ways to read it. And so I start with the language of the statute, and it begins with an expression if the manufacturer, its agents or dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting defects, so on and so forth. So it begins with the notion of it's not fixed. And the contention made by appellant here is that at the end of the time period it was fixed, that it was not defective. What's your response to that? There's two things. And, Your Honor, respectfully, that so on and so forth, the statute allows you to read it. Oh, read it if you want. Or you can read it to me. Well, no, Your Honor. I'm saying respectfully that the meat of the statute is it's unable to cure within a reasonable number of attempts. So, first of all, by the very terms of the statute, it imposes a requirement, imposes a limit. It says you have a reasonable number of attempts to cure this vehicle. Once you've reached that reasonable number of attempts and the vehicle is not cured, that's it. That's it. You have to now take your vehicle back. This vehicle is a lemon. So the only interpretation there that's allowable, and, again, this is a consumer protection statute, is that once you've reached that reasonable number of attempts and you haven't been able to cure it, then you have a lemon. Even if the owner continues to take his car back and it is, in fact, cured? Absolutely, Your Honor, because you have to look at the purpose of the law. The purpose of the law is to protect consumers. Now, the alternative to that is to say, okay, you've reached the vehicle. The vehicle's been in, as Your Honor mentioned, for 30 days, 50 days, or as in Mr. Dionisio's case, the vehicle was in 78 days during the first 19 months. Now, what's a consumer to do? Well, do I sue? At this point, do I sue? And if I sue, then I have to wait two years until the vehicle, until this case gets resolved with a defective vehicle. Otherwise, I waive my case. That's not the purpose of the lemon law. The purpose of the lemon law was to get these vehicles out of the hands of consumers because they're troublesome. It's not a waiver statute. The premise is if you sue, suppose you've gotten to the end of the period. Let's make this hypothetical so you don't confuse it with the current facts. The car's got lots of problems. But by the end of the period, it's fixed. We'll call it a dodge. The dodge is fixed. It can be argued and has been argued and other cases have discussed whether being the cause of action lies. If it's fixed, should the statute be interpreted in such a way as to permit the parties to go back to what used to be a problem but is no longer a problem and commence an action? Absolutely not, Your Honor, because that would just have consumers going back and forth to court. Now, and as Your Honor mentioned, that's not the facts here. This vehicle wasn't fixed. So even if it were so, there's evidence here that this vehicle had continuing defects before 78 days, before the two-year period. The vehicle was back in another four times, 13 separate warranty repairs during the life of the warranty. So this vehicle was not fixed. And secondly, when we talk about fixed during the period, what are we talking about? Are we talking about a snapshot of the vehicle in one day, which is what Bentley's trying to say? Bentley wants to talk about a snapshot of the vehicle on a certain day and say this vehicle's fixed. But that's not how it works with vehicles. A vehicle may be okay today but may not be okay tomorrow, as the Venezia vehicle was. So the Lemon Law doesn't talk about a snapshot. What the Lemon Law, the express terms of the Lemon Law, it's a reasonable number of attempts. And the Lemon Law doesn't release that as a fact question. The Lemon Law doesn't say fixed after a two-year period or fixed after 30 days. The Lemon Law gives the 30 days as a presumption, but it's a presumption that there's a reasonable effort. I mean, go back to the part that I read. That could be interpreted to say the if clause is if there's a problem. And if it turns out factually there's not a problem, is the statute triggered? Your Honor, there is a trigger because you have to look at the legislature. The legislature put the continuing defect. There's only one place where the continuing defect appears, and that's in the second part of the presumption when it talks about four or more repairs and the defect continues to exist. It doesn't put it in the 30-day part, and it certainly doesn't put it in 1263. It doesn't say a reasonable number of attempts and the defect continues to exist. Now, it's black letter law. But where in 1263 is there something that says there's a cause of action if the manufacturer has been able to conform the motor vehicle? Your Honor, you have to look at the language that the legislature did add. It's what I'm looking at. And it starts. It starts. 1263 starts by saying if the manufacturer has been unable to conform. So where is the cause of action if the manufacturer has been able to conform? If the manufacturer has conformed the vehicle within a reasonable number of attempts, then there is no cause of action. But actually, that's you're giving me a statute the legislature didn't write. Your Honor, what the legislature did write is if the manufacturer hasn't been unable to conform within a reasonable number of attempts, then they need to buy the vehicle back. That's the cause of action. What we have here is not one defect. You get a defect, cure it. Another defect, cure it. What do we do about that? It says reasonable opportunity to cure the defect. And each time maybe they cure the defect first chance. Well, I think the statute talks about any defect in the vehicle. And it's not just one defect because that's what happens. And that's why the statute gives you 1264 defining what it defines. And it talks about and it differentiates between when you have the same defect occurring four or more times or when you have any defects and your vehicle is out of service for over 30 days. Because this is a statute to protect consumers from a vehicle that's continually troublesome, whether that be the same defect four or more times or an accumulation of defects that goes over 30 days. Now, back to the notice. And they made a lot of this notice. But the record is replete with notice. First of all, they had notice from the get-go, their warranty to the consumers, specifically advises the consumer take your vehicle to the dealership. Your dealership is the one that's responsible and ultimately responsible for solving all your problems. So the dealer, the consumer is only doing what they ask. Secondly, the statute, 1264, says notice by the consumer or on behalf of the consumer, which means that it presupposes that anyone can give Bentley notice of the defects. And the dealership did here have. You had each repair opportunity was evidenced by a warranty record that goes to Bentley. Bentley decides whether to pay it or not. And, in fact, some of the warranty, some problems they didn't pay because they blame him. The ones where they admitted it was a defect. And, again, Milosevic says if you pay for something under warranty, it's a defect. Same thing under their warranty. If we pay for something, it's a defect. If it's not a defect, then we're not paying for it. So they pay for each of these defects. They had notice by the warranty records that they got. Secondly, they had notice because you had hotline documents, which were documents that were sent directly from the dealership to them on behalf of the consumer, saying these are the problems, and Bentley's technicians worked in tandem, giving the dealership instructions on how to repair the vehicle. That's direct notice. Third, they had notice because they were sent a letter of the defects saying you have a liminal claim here. So they have notice after notice after notice after notice. And for them to say, take all your problems to the dealership, and then at trial say, well, we're stepping back. Well, you designate an agent. Once you designate an agent and you make all representations to that agent, that that agent is the end-all, be-all, you can't take that back. Secondly, the case that they cited in Georgia specifically said that you can't give notice via the agent because the warranty in that case, the specific warranty provision, it was an enforcement provision, which said you need to give us direct notice of these defects. Here you don't have those facts. Here what you have is a warranty that says take it to your dealership, and they'll solve everything. And here you have warranty records that are sent directly to them. And here you have hotline documents that are sent directly to them. Here you also have a warranty manual by Bentley that advises dealerships that if a vehicle has been in for three or more times for the same, for repeat repairs, to let them know. If a vehicle has been in for, I believe, for over three days, to let them know. So you have all these evidence of notice, not just one set of notice. You have document after document after document that Bentley had notice of these defects, and they did nothing about it. And, again, back to their point where the vehicle is cured. The vehicle was not cured at any point. In fact, their own repair agent, their service manager, which is Cashmore, at trial, he admitted, we went over every single repair record, and that testimony, we've cited it in our briefs. After every single repair record, we said, was the vehicle defect-free after this repair? No. Let's look at the next repair. Every single repair record from repair number one all the way to warranty repair number 13, Mr. Cashmore, their agent, their service manager, for their agent, basically admitted that the vehicle was never brought into compliance. Now, again, so their whole appeal is based on, one, misstating the law. Milosevic is the law here. And also the express terms of the statute, which says you don't – it says once you have a reasonable number of attempts, then that's it. And, secondly, it's also based on conclusions of fact, which they don't get the benefit of. They don't get the benefit of an appeal in saying the vehicle was fixed at this two-year anniversary. They're talking about one maintenance visit, one maintenance visit on one day, as opposed to – and then telling this Court to ignore the fact that there were nine repair attempts before that and there were four other repair attempts after that. And then even after that, after the warranty, there was still another repair. And even after that repair that was under the warranty, Mr. Venezia testified that the vehicle still had problems. Now, whether they want to say that they don't want to believe, Mr. Venezia, that it's not true, well, that was for the jury to decide. And the jury decided here. The jury decided this vehicle was defective. This vehicle was a lemon. It was never brought into compliance. And even so, it's not the legal standard. And even if it was the legal standard, it was never brought into compliance. And if this vehicle here doesn't fit the lemon law, 78 days in the first 19 months, and they're going to dispute it, Mr. – he'll come here and say, well, it's not 78 days. That's the evidence that was on record. And that's their own evidence. Their own expert prepared a document saying days out of service. He admitted 76. The repair record said 78. Now, we get – they don't get the benefit of arguing against that on appeal. But if this vehicle wasn't repaired, what vehicle will ever fit the lemon law? Thank you, Your Honor. Thank you. You're actually in deficit. We'll give you about 30 seconds to say something that's essential, if there is something essential. Well, all I can do on the repair day is urge the Court to review the record. The 78 days is based on the testimony of the plaintiff that he believes that the authors of the document don't know what they're talking about when they say the invoice date means the date the service was billed to the manufacturer. There were only two notices on the referrals back to the manufacturer on problems that the dealership couldn't figure out. But I guess if I can make one point. First off, Spitzer, if you look at Spitzer – If you make one point, you probably shouldn't start first off. Okay. Because there's not going to be a second. Okay. I'm sorry. Spitzer quotes legislative intent, which is not present here. But why is there an opportunity to cure in the Arizona model? If liability is certain and set before there's any notice to the manufacturer, which in this case is after the warranty lapses in May of 2007, why did the legislature put it in? The plaintiff cites a case that discusses legislative intent and says there's a presumption against surplusage. They put it in there for a reason. Why did they say notice, direct written notice to the manufacturer and opportunity to cure? And that amplifies the importance of the presumption because they – and the jury instruction that I did not get, which was that they don't get the presumption if they didn't give us an opportunity to cure. And the evidence was unrebutted that the regional – the West Coast representative of Bentley, when he reported – when Mr. Venezia reported the problem, said I want my money back in May of 2007, that this man called him up and said, I'm coming to town, let's go through your car end to end, and I'll address every concern. And he said, I want my money back. So why did they put it in there? What would be the purpose? We understand your argument. I've read the briefs. We thank both counsel for their helpful arguments. The case just argued is submitted, and we are adjourned for the day. Thank you, Your Honor.
judges: Anello, Fletcher B. , Clifton